UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Fort Myers Division

**Ashley Leigh**, **Erik Berg**, and
**James Griffith**,

       Plaintiffs;

  v.

**Artis-Naples, Inc.**,

       Defendant.

Case No.

Demand for a Jury Trial

**VERIFIED COMPLAINT**
**for Reinstatement, Declaratory and Injunctive Relief,**
**and Compensatory and Punitive Damages**

# TABLE OF CONTENTS

NATURE OF THE ACTION ....................................................................... 1

EXHAUSTION OF REMEDIES ................................................................. 4

THE PARTIES .............................................................................................. 5

FACTUAL ALLEGATIONS ....................................................................... 6

I.   Plaintiffs' Religious Objections to the COVID-19 Vaccines. ............. 6

II.  The COVID-19 Vaccines' Undisputed Link to Aborted Fetal Cell Lines. ......... 9

III. Artis-Naples's Unlawful "No-Exemption" Vaccination Mandate................. 11

   A.   Artis-Naples's Initial COVID Policies and Procedures. ......................... 12

   B.   The COVID-19 Employee Vaccination Mandate. .................................. 13

   C.   The Sham Accommodation Process. ....................................................... 15

   D.   The Mandate Violates Florida Law and Contradicts Other Regulations.. 18

IV.  Artis-Naples's Refusal to Accommodate Plaintiffs' Religious Beliefs. ............. 20

V.   Artis-Naples Wrongfully Terminated Plaintiffs. ................................. 24

VI.  Artis-Naples's Unlawful, Unscientific and Irrational Pretext for its
     Discriminatory Mandate. ..................................................................... 28

   A.   As a Matter of Law, Complying with Florida Law and Public Policy
        Cannot Be an "Undue Hardship" on Artis-Naples. ............................... 29

   B.   Scientific Evidence Shows that Unvaccinated Persons Are Not Vectors
        of Disease Compared with Vaccinated Persons. .................................... 29

   C.   Artis-Naples Allows Unvaccinated Patrons and Visitors on Premises. .... 33

   D.   Artis-Naples Allows Unvaccinated Employees to Interact with
        Vaccinated Employees on Its Premises and at Its Sponsored Events. ...... 34

   E.   The Mandate is An Extreme Outlier in Florida's Performance Arts
        Industry. ................................................................................................ 37

VII. The Availability of Reasonable Accommodations, and Plaintiffs' Willingness
     to Comply with Alternative Safety Measures.................................... 39

CLAIMS FOR RELIEF ............................................................................. 40

PRAYER FOR RELIEF ............................................................................. 48

DEMAND FOR JURY TRIAL ................................................................. 49

VERIFICATION ........................................................................................ 51

INDEX OF EXHIBITS .............................................................................. 54

> Florida Statute 381.00317 "appears to *require* employers to accept and approve any of the five exemption requests without further consideration beyond completeness of the required documentation, and the employer *must allow* the employee to opt out of an employer's vaccine mandate."[1]
>
> - QUARLES & BRADY LLP, Artis-Naples's Legal Counsel

Plaintiffs Ashley Leigh, Erik Berg, and James Griffith, on knowledge as to their own actions or otherwise upon information and belief, allege as follows:

## NATURE OF THE ACTION

1.      This is an action for religious discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., arising from Defendant Artis-Naples's unlawful failure to accommodate Plaintiffs' religious beliefs, and its wrongful termination of Plaintiffs.

2.      Defendant Artis-Naples is a nonprofit arts organization that operates the Naples Philharmonic, an ensemble of professional musicians. Although, as acknowledged by Artis-Naples's own counsel (note 1, *supra*), the State of Florida expressly *requires* private-employers to exempt all employees that request religious (and other) exemptions from COVID-19 vaccination requirements, *see* Fla. Stat. § 381.00317, Artis-Naples is marching to the beat of its own drum: It is imposing a no-exemption vaccine mandate on all employees and job applicants in willful and reckless disregard of state and federal law.

---

[1] Alexis Barkis, Quarles & Brady LLP, *Florida Legislation Restricting Workplace Vaccine Mandates—What Florida Employers Need to Know* (Nov. 19, 2021), https://perma.cc/8X28-CE33 (emphasis added) [attached as **Exhibit 1**].

3.     Plaintiffs are three former Artis-Naples employees and longstanding musicians for the Naples Philharmonic. Together, Plaintiffs have dedicated 82 years of their professional careers to serving Artis-Naples and enriching the local community with their musical talents.

4.     As committed Christians, Plaintiffs have sincere religious objections to Artis-Naples's COVID-19 vaccination mandate, for various religious reasons, including the undisputed fact that each available vaccine was developed, tested or otherwise made from or with fetal cell lines from aborted fetuses.

5.     Consistent with federal and state law, Plaintiffs brought their bona fide religious objections to Artis-Naples's attention, and in good faith they requested a reasonable accommodation to the vaccine mandate. But Artis-Naples refused to accommodate Plaintiffs' religious beliefs, refused to follow the clear requirements of Florida law mandating religious exemptions, and refused to allow Plaintiffs to take the same alternative precautions that Artis-Naples permitted its patrons to take, when those patrons attend concerts and share the same space and air as Plaintiffs. Instead, Artis-Naples retaliated against Plaintiffs and wrongfully terminated them solely because of their religious objections to its unlawful mandate.

6.     Artis-Naples's arbitrary and needless no-exemption vaccination mandate consequently cost Plaintiffs their jobs, upended their music careers, and inflicted on them immeasurable pain and suffering, not the least of which is the immense pressure to sacrifice their conscience to feed their families.

7.     Critically, Plaintiffs have no desire to jeopardize the health and safety of their coworkers and concert patrons; they merely asked their employer to follow Florida law and Title VII, and to reasonably accommodate their bona fide religious beliefs. And to be sure, Plaintiffs were willing to comply with alternative safety measures such as regular testing, masking, and symptom monitoring. According to the Florida Department of Health, these measures are medically sufficient—and legally required—alternatives to forced vaccination.

8.     Nor can Artis-Naples seriously argue that accommodating Plaintiffs' religious beliefs would have caused an undue hardship on its operations. As a matter of law, *it is never an undue hardship for an employer to comply with the law and public policy of a state*—here clearly expressed in Fla. Stat. § 381.00317, which requires religious exemptions to be provided to all who ask. What is more, Artis-Naples allows unvaccinated guests to fill its concert halls during each performance. If Artis-Naples were truly concerned about potential "outbreaks" caused by unvaccinated people on its premises, then it would not accommodate hundreds of concertgoers while subjecting its employees to second-class treatment. Any undue hardship in this case is on Plaintiffs, caused by Artis-Naples's intentional and reckless refusal to follow the law.

9.     Artis-Naples's religiously discriminatory vaccination mandate cannot be harmonized with Title VII and Florida law. Upon information and belief, no other Florida performing arts organization imposes such a draconian and illegal "no exemption" vaccine policy. And because of Artis-Naples's dogged insistence on

enforcing its unlawful mandate, judicial recourse is Plaintiffs' only way to vindicate their federal civil rights.

## JURISDICTION AND VENUE

10. This action arises under the laws of the United States, specifically Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

11. This Court has jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f).

12. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

13. This Court may grant declaratory relief under 28 U.S.C. §§ 2201 and 2202, and it may grant injunctive relief under Fed. R. Civ. P. 65 and 42 U.S.C. § 2000e-5(g)(1).

14. This Court may grant Plaintiffs' prayer for damages under Fed. R. Civ. P. 54 and their prayer for costs and expenses, including reasonable attorneys' fees and costs, under 42 U.S.C. § 2000e-5(k).

## EXHAUSTION OF REMEDIES

15. Plaintiffs have exhausted their administrative remedies and are entitled to bring this action. All conditions precedent to filing claims under Title VII and the Florida Civil Rights Act, Fla. Stat. § 760.11, have been performed or have occurred.

16. Plaintiffs each filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued Plaintiffs each

a Notice of Right to Sue on August 4, 2022, which Plaintiffs received on or about the same date. This Complaint has been timely filed within 90 days of Plaintiffs' receiving their respective Right to Sue letters.

## THE PARTIES

**1.    The Plaintiff Musicians.**

17.    Plaintiff Ashley Leigh is a professional musician who served as Assistant Principal and Second Clarinet for the Naples Philharmonic. Prior to her wrongful termination, Leigh was a tenured employee of Artis-Naples for 17 years, since 2005.

18.    Plaintiff Erik Berg is a professional musician who was Associate Principal Second Violin for the Naples Philharmonic. Prior to his wrongful termination, Berg was a tenured employee of Artis-Naples for 32 years, since 1990.

19.    Plaintiff James Griffith is a professional musician who played the viola for the Naples Philharmonic. Prior to his wrongful termination, Griffith was a tenured employee of Artis-Naples, having started to work there 33 years ago, in 1989.

**2.    Defendant Artis-Naples.**

20.    Defendant Artis-Naples, Inc. is a nonprofit organization incorporated under the laws of the State of Florida and headquartered in Naples, Florida.

21.    Artis-Naples is an "employer" within the meaning of Title VII because it has "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b).

## FACTUAL ALLEGATIONS

### I.   Plaintiffs' Religious Objections to the COVID-19 Vaccines.

22.    Plaintiffs' sincerely held religious beliefs prohibit them from receiving any of the three COVID-19 vaccines that were available as of the time of their employment and unlawful termination, for various theological and non-negotiable doctrinal reasons, including, without limitation, the undisputed fact that each available vaccine was developed, tested, or otherwise made from or with fetal cell lines from aborted fetuses.

23.    Plaintiffs' sincerely held religious beliefs are rooted in the Bible's teachings that "[a]ll Scripture is given by inspiration of God, and is profitable for doctrine, for reproof, for correction, [and] for instruction in righteousness." *2 Timothy* 3:16 (King James). Plaintiffs accordingly believe that they must conform their lives, including their decisions relating to medical care, to the commands and teaching of Scripture.

24.    Plaintiffs have sincerely held religious beliefs that God forms children in the womb, that each child is made in God's image and likeness, and that He knows them before their birth.[2] Plaintiffs thus believe that life is sacred from the moment of conception.

---

[2] *See, e.g., Psalm* 139:13–14 ("For you formed my inward parts; you knitted me together in my mother's womb. I praise you, for I am fearfully and wonderfully made."); *Psalm* 139:16 ("Your eyes saw my unformed substance; in your book were written, every one of them, the day that were formed for me, when as yet there was none of them."); *Isaiah* 44:2 (King James) ("[T]he Lord that made thee, and formed thee from the womb…."); *Isaiah* 49:1 (King James) ("The Lord hath called my from the

25.    Because they sincerely believe that life is sacred from the moment of conception, Plaintiffs also believe that killing an unborn child through abortion is murder, in violation of Scripture.[3]

26.    Plaintiffs thus have sincerely held religious beliefs, rooted in Scripture, that any action or thing that condones, supports, justifies, or benefits from taking innocent human life through abortion is sinful, contrary to the Scriptures, and therefore must be denounced, condemned, and altogether avoided.

27.    Plaintiffs accordingly have sincerely held religious beliefs, rooted in Scripture, that they would offend God if they knowingly used a product derived from or connected in any way with abortion.

28.    Relatedly, Scripture instructs Plaintiffs that their bodies are temples of the Holy Spirit.[4] As such, Plaintiffs sincerely believe that to inject medical products that are connected in any way to aborted fetal cell lines would defile their bodies.

---

womb; from the bowels of my mother hath he made mention of my name."); *Isaiah* 49:5 ("the Lord that formed me from the womb to be his servant"); *Jeremiah* 1:5 (King James) ("Before I formed thee in the belly I knew thee; and before thou camest forth out of the womb I sanctified thee, and I ordained thee."); *Genesis* 1:26–27 (King James) ("Let us make man in our image, after our likeness … So God created man in his own image; in the image of God created he him; male and female created he them.").

[3] *See, e.g.*, *Exodus* 20:13 (King James) ("Thou shalt not kill."); *Exodus* 21:22–23 (setting the penalty as death for even the accidental killing of an unborn child); *Exodus* 23:7 (King James) ("[T]he innocent and righteous slay thou not, for I will not justify the wicked."); *Genesis* 9:6 (King James) ("Whoso sheddeth a man's blood, by man shall his blood by shed: for in the image of God made he man."); *Proverbs* 6:16–17 (King James) ("These six things doth the Lord hate: yea, seven are an abomination to him … hands that shed innocent blood.").

[4] *See 1 Corinthians* 6:15–20 (King James) ("Know ye not that your bodies are the members of Christ?.... Know ye not that your body is the temple of the Holy Ghost

29.     Scripture also instructs Plaintiffs that the Holy Spirit was given to them by God to reprove them of righteousness and sin and to guide them into all truth.[5] Plaintiffs thus believe that the Holy Spirit—through prayer and the revelation of Scripture—guides them in all decisions they make in life.[6] Plaintiffs accordingly believe that they will receive all answers to their questions through prayer, including for decisions governing their medical health.[7]

30.     Through much prayer and reflection, Plaintiffs have sought wisdom, understanding, and guidance on the proper decision to make concerning the COVID-19 vaccines. Plaintiffs sincerely believe that the Holy Spirit has counseled them that

---

which is in you, which have of God, and ye are not your own? For ye are bought with a price: therefore glorify God in your body, and in your spirit, which are God's.").

[5] *See John* 16:8, 13 (King James) ("And when he is come, he will reprove the world of sin, and of righteousness, and of judgment … when he, the Spirit of truth, is come, he will guide you into all truth: for he shall not speak of himself; but whatsoever he shall hear, that shall he speak: and he will shew you things to come.").

[6] *See, e.g.*, *John* 16:7 (King James) ("Nevertheless I tell you the truth, it is expedient for you that I go away: for if I go not away, the Comforter will not come unto you; but if I depart, I will send him unto you."); *John* 14:26 (King James) ("But the Comforter, which is the Holy Ghost, whom the Father will send in my name, he shall teach you all things, and bring all things to your remembrance, whatsoever I have said unto you.").

[7] *See, e.g.*, *James* 1:5 (King James) ("If any of you lack wisdom, let him ask of God, that giveth to all men liberally, and upbraideth not; and it shall be given him."); *Mark* 11:24 (King James) ("Therefore I say unto you, What things soever ye desire, when ye pray, believe that ye receive them, and ye shall have them."); *Philippians* 4:6–7 (King James) ("[B]ut in everything by prayer and supplication with thanksgiving let your request be made known to God. And the peace of God, which passeth all understanding, shall keep your hearts and minds through Christ Jesus."); *1 John* 4:14–15 (King James) ("And this is the confidence we have in him, that, if we ask anything according to his will, he heareth us. And if we know that he hear us, whatsoever we ask, we know that we have the petitions that we desired of him.").

accepting any of the three vaccines available prior to their termination is contrary to Scripture and objectively sinful. Plaintiffs therefore sincerely believe that the Holy Spirit has instructed them not to accept a COVID-19 vaccine, and that it would be a sin against God to do so.

31.     As further alleged below, Plaintiffs shared their bona fide religious beliefs, including their sincerely held religious objections to the COVID-19 vaccines, with Artis-Naples. And consistent with both Title VII and Florida law, Plaintiffs asked Artis-Naples for a reasonable accommodation and exemption from its employee vaccination mandate. But Artis-Naples refused Plaintiffs' request.

## II.   The COVID-19 Vaccines' Undisputed Link to Aborted Fetal Cell Lines.

32.     Prior to Plaintiffs' termination, in response to the spread of the novel coronavirus SARS-CoV-2, which causes the disease COVID-19, the Food and Drug Administration ("FDA") authorized or approved the use of three vaccines.

33.     On December 1, 2020, the FDA issued an Emergency Use Authorization ("EUA") for the Pfizer-BioNTech vaccine.  One week later, the FDA issued a EUA for the Moderna COVID-19 vaccine. The FDA issued an EUA for the Johnson & Johnson COVID-19 vaccine on February 27, 2021.

34.     Plaintiffs have sincerely held religious objections to the Johnson & Johnson (Janssen Pharmaceuticals) vaccine because it used aborted fetal cells lines to produce and manufacture the vaccines.

35.     As reported by the North Dakota Department of Health, "[t]he non-replicating viral vector vaccine produced by Johnson & Johnson did require the use of

fetal cell cultures, specifically PER.C6, in order to produce and manufacture the vaccine."[8]

36.    The Louisiana Department of Health likewise confirms that the Johnson & Johnson COVID-19 vaccine, which used PER.C6 fetal cell line, "is a retinal cell line that was isolated from a terminated fetus in 1985."[9]

37.    Scientists at the American Association for the Advancement of Science have likewise published research showing that the Johnson & Johnson vaccine used aborted fetal cell lines in the development and production phases of the vaccine.[10]

38.    Plaintiffs also have sincerely held religious objections to the Moderna and Pfizer/BioNTech COVID-19 vaccines because both have their origins in research on aborted fetal cells lines.

39.    As reported by the North Dakota Department of Health, the Moderna and Pfizer mRNA vaccines are ultimately derived from research and testing on aborted fetal cell lines. In fact, "[e]arly in the development of mRNA vaccine technology, fetal cells were used for 'proof of concept' (to demonstrate how a cell could take up mRNA

---

[8] *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* 2 (Dec. 1, 2021), https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19_Vaccine_Fetal_Cell_Handout.pdf.

[9] Louisiana Dept. of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* 2 (Dec. 21, 2020), https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf.

[10] Meredith Wadman, *Vaccines That Use Human Fetal Cells Draw Fire*, 368 Science Mag.                                  1170                                  (2020), https://www.science.org/doi/epdf/10.1126/science.368.6496.1170.

and produce the SARS-CoV-2 spike protein) or to characterize the SARS-CoV-2 spike protein."[11]

40.    The Louisiana Department of Health also confirms that aborted fetal cells lines were used in the "proof of concept" phase of the development of their COVID-19 mRNA vaccines.[12]

41.    Because all three of the COVID-19 vaccines that were available to Plaintiffs prior to their termination were developed and produced from, tested with, researched on, or otherwise connected with the aborted fetal cell lines HEK-293 and PER.C6, Plaintiffs' sincerely held religious beliefs compelled them to abstain from obtaining or injecting any of these products into their body, regardless of the perceived benefit or rationale.

## III.   Artis-Naples's Unlawful "No-Exemption" Vaccination Mandate.

42.    Artis-Naples bills itself as "Southwest Florida's home for the visual and performing arts."[13] Operating out of the Kimberly K. Querrey and Louis A. Simpson Cultural Campus, Artis-Naples is home to The Baker Museum, a fine arts museum, and the Naples Philharmonic, a professional musical ensemble.

43.    The Naples Philharmonic employs both salaried and per-service musicians. Each year the ensemble performs over 100 orchestral and chamber concerts, as well as opera and ballet, education, community and special event concerts.

---

[11] North Dakota Health, *supra* note 8.

[12] Louisiana Dept. of Public Health, *supra* note 9.

[13] *About Artis-Naples*, Artis-Naples, https://artisnaples.org/about/.

44.     Artis-Naples has two performance venues, the massive Frances Pew Hayes Hall and the smaller Myra J. Daniels Pavilion. Hayes Hall offers just over 1,470 seats, while Daniels Pavilion is a black-box theatre with just under 300 seats.



*Artis-Naples's 1,400-person Hayes Hall, which is outfitted with state-of-the art air filtration systems.*

### A.     Artis-Naples's Initial COVID Policies and Procedures.

45.     In March 2020, in response to the worldwide spread of the novel coronavirus SARS-CoV-2, Artis-Naples suspended the Naples Philharmonic's remaining performances for the 2019-2020 season.

46.     Artis-Naples restarted its performance offerings in September 2020 after adopting and implementing various COVID-19 policies and protocols, including weekly testing and masking for musicians, socially-distanced performances, and placing filtrating fans on stage.

47.     During this time, Artis-Naples also made "a variety of safety upgrades" to "improve the safety of [its] patrons, musicians, guest artists, staff members and volunteers." These facility "upgrades" include "the installation of a needlepoint bipolar ionization (NPBI) system on 29 HVAC air handling units, use of air-assisted

machines to sanitize event spaces between performances," and "changing more than 70 faucets on the cultural campus to touch-free units."[14]

48.    Artis-Naples also implemented "high cleanliness standards," by "regularly" cleaning and disinfecting "restrooms and surfaces such as counters, railings, door handles, elevator buttons and chairs." It also began offering "[s]anitizing stations" at "all entry points after scanning in and throughout the cultural campus."

49.    Artis-Naples claimed that its "safety policies and protocols" were "dynamic" and thus it would continue to review them "in light of evolving federal, state and local government and department of health guidelines."[15]

50.    With these kinds of protocols in place, the Naples Philharmonic, comprised of both vaccinated and unvaccinated musicians, successfully delivered a full slate of concerts during the 2020-2021 season.

**B.    The COVID-19 Employee Vaccination Mandate.**

51.    In July 2021, Artis-Naples's Chief Executive Officer Katherine van Bergen announced a COVID-19 vaccination requirement (the "Mandate") for Artis-Naples employees, including all Naples Philharmonic salaried and per-service musicians.[16]

---

[14] *COVID-19 Protocols & Policies*, Artis-Naples [hereafter "Artis-Naples 2021-2022 COVID Protocols"], https://perma.cc/UY7A-5MHD (Apr. 13, 2022).

[15] Artis-Naples 2021-2022 COVID Protocols, *supra* note 14.

[16] Memorandum, Artis-Naples, Musicians COVID-19 Vaccination Requirement and Accommodation Process [hereafter "Mandate"] (2021) [attached as **Exhibit 2**].

52.     The Mandate required Artis-Naples staff members, Naples Philharmonic core musicians, and per-service musicians to be fully vaccinated and provide written proof to Artis-Naples by September 7, 2021.

53.     Upon information and belief, Artis-Naples had never before required its employees to be vaccinated against any disease or illness.

54.     The Mandate also extends to job applicants. For example, a job posting for an Assistant Conductor position stated: "Proof of COVID-19 vaccination required for employment with Artis—Naples."[17] Similarly, Artis-Naples posted an advertisement in Spring 2022 for an orchestra position that stated "Proof of COVID-19 vaccination required for employment."[18] And as of August 5, 2022, Artis-Naples is advertising an Associate Principal Second Violin position that states that "Proof of COVID-19 vaccination is required to be a qualified applicant."[19]

55.     The Mandate further applies to volunteers. According to Artis-Naples, an interested person can "qualify" to be volunteer only if they "are fully vaccinated against COVID-19."[20]

---

[17] Artis-Naples, Career Listings, Assistant Conductor, https://perma.cc/DQ45-4267.

[18] Flyer, Artis-Naples, Section Violin (2022), https://artisnaples.org/uploads/files/resources/documents/naples-philharmonic/2022/SectionViolinAudition.pdf.

[19] Flyer, Artis-Naples, Associate Principal Second Violin (2022), https://artisnaples.org/uploads/files/resources/documents/naples-philharmonic/2022/Violin.pdf.

[20] *Volunteers*, Artis-Naples, https://artisnaples.org/support/volunteer.

56.    As shown below, however, the Mandate does *not* apply to patrons of, and visitors to, Artis-Naples.

**C.    The Sham Accommodation Process.**

57.    When it initially announced the Mandate, Artis-Naples purported to offer employees needing a medical or religious exemption the option to "seek a reasonable accommodation."[21]

58.    To that end, Artis-Naples established an "Accommodation Review Committee" (the "Committee"). The initial three-person committee comprised of James Dallas, the orchestra personnel manager; Danielle Daly, Artis-Naples's Human Resources Director; and Beth Schick, Artis-Naples's Chief Administrative Officer.

59.    To obtain an "accommodation" from the Mandate, Naples Philharmonic musicians were required to complete a "Request for Accommodation Form" and submit it to James Dallas, the orchestra personnel manager, by September 1, 2021.[22]

60.    As part of the review process, the Committee would purportedly consider the nature and scope of granting each individual accommodation. For example, the Committee was supposed to "consider the Musician's role and the requirements of that position as well as whether the accommodation will pose an undue hardship on Artis-Naples or a direct threat to the health and safety of others."[23]

---

[21] Mandate, *supra* note 16; Ex. 2.

[22] *See* Form, Artis-Naples, COVID-19 Vaccination Religious Accommodation Request (2021) [attached as **Exhibit 3**].

[23] Mandate, *supra* note 16; Ex. 2.

61.     Once a decision was purportedly made, the Committee was supposed to notify the musician in writing whether further discussion or information was needed or if the requested accommodation had been granted or denied.

62.     If a request was denied, the Committee was supposed to communicate any available alternative accommodation. If additional information or requirements were needed, the Committee was supposed to state so in writing and allow a reasonable amount of time for a written response. This supposedly "interactive process" was to continue until the Committee had either granted or denied the requested accommodation. The final decision was supposed to be presented to the applicant in writing.

63.     Upon information and belief, over ten Artis-Naples employees initially submitted applications for a religious or medical exemption to the Mandate.

64.     Upon information and belief, in September 2021, the Committee reviewed and *granted* every exemption request.

65.     The religious exemption requests granted by the Committee included Plaintiffs, two other musicians, a security guard, and front desk personnel.

66.     However, none of the employees, including Plaintiffs, received any accommodation. That is because Artis-Naples implemented an illegal policy that no exemption or accommodation would or could be granted to any employee who had to be present onsite to perform their job.

67.     To further this illegitimate end, and unsatisfied with the work and results of the Committee, Artis-Naples then appointed two new members to the Committee:

David Filner, the Executive Vice President of Artistic Operations, and musician Paul Votapek. The purpose of these new appointments was to ensure that no employee whose presence was needed in any facility of Artis-Naples would receive an exemption to the Mandate, irrespective of that employee's job title, function or role.

68.    Voiding the determinations already made by the original three-person committee, the new Committee led by Filner issued blanket, rubber-stamped denials of each previously approved applicant, along with a dozen new applications.

69.    Upon information and belief, over 20 Artis-Naples employees sought religious and medical exemptions to the Mandate, and all but one were denied.

70.    Thus, Plaintiffs' applications, which were initially approved, were arbitrarily denied without individualized consideration.

71.    Upon information and belief, the only Artis-Naples employee to receive an exemption to the Mandate was James Dallas, the orchestra's personnel manager. Dallas sought a medical exemption and recused himself from the review process. The Committee granted his request for a medical exemption but only on the condition that he work remotely. Dallas agreed with the condition and worked remotely until his resignation in October 2021.

72.    Upon information and belief, Dallas resigned from Artis-Naples—where he worked for 38 years—out of protest against the Mandate, and the resulting discrimination against his fellow employees.

73.    Artis-Naples's rubber-stamp, blanket denial of all religious accommodation requests not only shows that it failed to consider each employee's

17

request on a case-by-case basis as required by federal law; it shows that Artis-Naples utterly disregarded its employees' bona fide religious objections to the Mandate.

### D.   The Mandate Violates Florida Law and Contradicts Other Regulations.

74.     In its Employee Handbook, Artis-Naples claims that it "seek[s] to comply with all applicable federal, state and local laws related to discrimination."[24] Yet Artis-Naples is knowingly and willfully violating Florida law requiring religious exemptions to be freely given to all who ask, and implementing and enforcing religiously discriminatory policies and practices in reckless disregard of state and federal law.

75.     The Mandate expressly violates Florida law. Enacted in November 2021, Section 381.00317 of the Florida Statutes prohibits private employers from imposing a COVID-19 vaccination mandate on employees without providing individual exemptions, including religious exemptions, to all who request them.[25]

76.     In blatant disregard of Florida law, Artis-Naples provides no medical or religious exemptions for its employees, nor does it provide testing alternatives. Artis-

---

[24]Artis-Naples,          Employee          Handbook          22          (2021),
http://artisnaplesbenefits.org/media/29251376/handbook-42221.pdf.

[25] In relevant part, the statute provides:

> A private employer may *not* impose a COVID-19 vaccination mandate for any full-time, part-time, or contract employee *without providing individual exemptions that allow an employee to opt out of such requirement on the basis of* medical reasons, including, but not limited to, pregnancy or anticipated pregnancy; *religious reasons*; COVID-19 immunity; periodic testing; and the use of employer-provided personal protective equipment.

Fla. Stat. § 381.00317 (2021) (emphasis added).

Naples's general policy and practice is that all employees must be fully vaccinated, without exception or exemption.

77.    According to a November 2021 article by the law firm *Quarles & Brady*, which has been counsel for Artis-Naples in pre-suit dealings and communications and is expected to represent it in this lawsuit, Section 381.00317 "appears to *require* employers to accept and approve any of the five exemption requests *without further consideration beyond completeness of the required documentation*, and the employer *must allow* the employee to opt out of an employer's vaccine mandate."[26]

78.    Quarles & Brady thus cautioned that employers like its own client Artis-Naples "need to comply with Florida's new law regarding vaccine mandates and exemptions" and that these employers "should immediately review their current vaccine mandate policies to ensure compliance with the new Florida legislation."[27]

79.    Upon information and belief, Artis-Naples failed to review its Mandate "to ensure compliance" with Section 381.00317. Moreover, Artis-Naples failed to grant exemptions to Plaintiffs, and to allow them to opt out, despite its own counsel's admission and advice that such exemptions were *required* by Florida law.

80.    The Mandate also contrasts with and flouts the Federal Government's rule requiring certain large employers to mandate vaccination *or periodic testing* for their employees. *See* 86 Fed. Reg. 61402 (2021) (stayed by *Nat'l Fed'n of Indep. Bus. v. Dep't*

---

[26] Barkis, *supra* note 1 (emphasis added); Ex. 1.

[27] Barkis, *supra* note 1; Ex. 1.

*of Lab., Occupational Safety & Health Admin.*, 142 S. Ct. 661 (2022)). The rule plainly recognized that employees are legally entitled to a reasonable accommodation under federal civil rights laws if they have sincerely held religious beliefs, practices, or observances that conflict with the vaccination requirement.

81.     The Mandate also differs substantially from the European Union's digital COVID-19 certificate, which considers as equivalent "that a person has either [1] been vaccinated against COVID-19 [2] received a negative test result or [3] recovered from COVID-19."[28]

## IV.    Artis-Naples's Refusal to Accommodate Plaintiffs' Religious Beliefs.

82.     In August 2021, after Artis-Naples announced the Mandate, Plaintiffs each timely submitted a request for religious accommodation. Plaintiffs used Artis-Naples's exemption form and otherwise complied with the accommodation process in every respect.

83.     In their requests, Plaintiffs informed Artis-Naples that the Mandate conflicted with their sincerely held religious beliefs, including their beliefs that all life is sacred to God and that the available vaccines' connection to aborted fetal cells rendered their receipt morally unacceptable as a matter of non-negotiable religious doctrine.

---

[28]     *EU    Digital    COVID    Certificate*,    European    Commission, https://ec.europa.eu/info/live-work-travel-eu/coronavirus-response/safe-covid-19-vaccines-europeans/eu-digital-covid-certificate_en.

84.    In September 2021, the Accommodation Review Committee met to review the applications. Upon information and belief, the Committee initially approved Plaintiffs' respective requests.

85.    But, unsatisfied with that outcome, Artis-Naples reconstituted the Committee and changed its leadership.

86.    After David Filner took control, the Committee arbitrarily reversed the initial decision on Plaintiffs' applications, along with the other employees' requests.

87.    Despite peddling an "interactive process until the Committee has either granted or denied the requested accommodation,"[29] Artis-Naples failed to engage in a bilateral, individualized, and cooperative process with Plaintiffs to explore an acceptable reconciliation between Plaintiffs' religious needs and the exigencies of Artis-Naples's operations.

88.    Indeed, Artis-Naples even failed to directly respond to Plaintiffs' requests for an exemption to the Mandate and for a religious accommodation. Instead, after Plaintiffs submitted their accommodation requests, Artis-Naples removed Plaintiffs and two other musicians from all concerts and instructed them to remain off campus.

89.    Unsettled by the lack of communication from Artis-Naples, Plaintiff Leigh submitted in September 2021 two separate and additional pleas for a religious exemption and accommodation. In both requests, Leigh made it clear to Artis-Naples

---

[29] Mandate, *supra* note 16; Ex. 2.

that she would be willing to wear masks, take periodic tests, and carry out other safety measures in lieu of vaccination. But Plaintiff Leigh's appeal was ignored.

90.    On September 29, 2021, Plaintiffs and two other musicians sent an email to their fellow members of the Naples Philharmonic, asking them "to stand with us in the current vaccine accommodation situation."[30] Plaintiffs and the two other musicians noted that "[w]e are not just numbers in an institution, but rather we are part of the Naples Philharmonic family." The musicians pointed out that the orchestra was "able to successfully maintain safe working conditions last year with weekly testing and masking." Thus, the musicians asked the orchestra members to vote to affirm the following:

> The Naples Philharmonic musicians stand unified in approving the five pending vaccine accommodation requests mentioned above. All accommodations shall include full compliance with current Covid safety protocols for as long as management deems necessary.

91.    Artis-Naples ignored Plaintiffs' commitment to "full compliance with current Covid safety protocols."

92.    Instead, scrapping the "interactive process," Artis-Naples CEO Kathleen van Bergen sent Plaintiffs each a letter dated October 5, 2021, announcing that Artis-Naples will "include only vaccinated musicians at least through the end of the calendar year."[31]

---

[30] E-mail from Ashley Leigh, to Glenn Basham (Sept. 29, 2021, 12:29 PM) [attached as **Exhibit 4**].

[31] Letter from Kathleen van Bergen, CEO, Artis-Naples, to Ashley Leigh (Oct. 5,

93.    As a result, Artis-Naples placed Plaintiffs on involuntary leave effective November 1, 2021. And as further punishment for not receiving the COVID-19 vaccine in violation of their religious convictions, Artis-Naples slashed Plaintiffs' pay by 30% for the remainder of the year. Van Bergen stated that Artis-Naples would reassess Plaintiffs' status and communicate any change by December 1, 2021.

94.    Despite forcing Plaintiffs into an involuntary leave with partial pay for being unvaccinated, Artis-Naples issued a "Media Alert" on October 28, 2021, announcing that on November 1—the very same day Plaintiffs' punishment became effective—Artis-Naples *would allow unvaccinated patrons to attend concerts and other large gatherings if they provided proof of a negative COVID test*.[32]

95.    But Artis-Naples refused to extend the same testing accommodation to Plaintiffs.

96.    Artis-Naples offered no reason why it provided testing accommodations to unvaccinated patrons coming to listen to the Naples Philharmonic but not to the musicians performing for those same unvaccinated patrons, in the same concert hall, breathing the same air.

97.    Three weeks after Artis-Naples placed Plaintiffs on their involuntary leave, Governor Ron DeSantis signed into law Florida Statute § 381.00317, which

---

2021) [attached as **Exhibit 5**]; Letter from Kathleen van Bergen, CEO, Artis-Naples, to Erik Berg (Oct. 5, 2021) [attached as **Exhibit 6**]; Letter from Kathleen van Bergen, CEO, Artis-Naples, to James Griffith (Oct. 5, 2021) [attached as **Exhibit 7**].

[32] Press Release, Artis-Naples, *COVID-19 Protocols and Policies Update* (Oct. 28, 2021) [attached as **Exhibit 8**].

prohibits private-employers like Artis-Naples from imposing COVID-19 vaccination mandates without granting religious (and other) exemptions and opt-outs to everyone who requests them.

98.    The law applies retroactively to any existing private-employer COVID-19 vaccination mandate, including Artis-Naples's Mandate.

99.    Despite Section 381.00317 becoming law in November 2021, Artis-Naples did not rescind the Mandate. Nor did Artis-Naples revise its "no exemption" policy to incorporate the exemption process mandated by Section 381.00317. Nor did Artis-Naples grant Plaintiffs' exemption requests or end Plaintiffs' involuntary leave.

100.    Instead, van Bergen sent Plaintiffs another letter dated December 1, 2021, stating that the Mandate remained in full force and that Artis-Naples would continue to subject Plaintiffs to involuntary, partially paid leaves of absence until further notice, notwithstanding their religious exemption requests.[33]

**V.    Artis-Naples Wrongfully Terminated Plaintiffs.**

101.    More than three months passed before Artis-Naples communicated again with Plaintiffs about their employment status. In March 2022, van Bergen invited Plaintiffs for separate meetings at Artis-Naples's offices.

---

[33] Letter from Kathleen van Bergen, CEO, Artis-Naples, to Ashley Leigh (Dec. 1, 2021) [attached as **Exhibit 9**]; Letter from Kathleen van Bergen, CEO, Artis-Naples, to Erik Berg (Dec. 1, 2021) [attached as **Exhibit 10**]; Letter from Kathleen van Bergen, CEO, Artis-Naples, to James Griffith (Dec. 1, 2021) [attached as **Exhibit 11**].

102.    Plaintiffs Leigh and Berg each met separately with van Bergen on April 1, 2022. The meeting took place in person, at Artis-Naples, where van Bergen and another Artis-Naples agent met with Leigh, and separately with Berg and Berg's wife.

103.    Prior to the meeting, van Bergen required Leigh and Berg to take a COVID-19 test, which they did, and both tested negatively.

104.    At the meeting, while seated at a small table in close proximity to van Bergen, Berg and his wife asked whether they needed to wear masks. Van Bergen responded that there was no need for masking, and that the meeting was safe, because Berg had just tested negative for COVID-19.

105.    Van Bergen shook the hands of both Leigh and Berg at this meeting, sat close to them at a table, and exhibited no safety concerns, because both had tested negative for COVID-19.

106.    Rather than providing Leigh and Berg with the same testing option that van Bergen considered to be a safe substitute for vaccination (and even for masking) during their close, in-person meeting, van Bergen instead provided Leigh and Berg with a letter from Artis-Naples dated April 1, 2022, outlining the fate of their jobs.[34]

107.    Because Plaintiff Griffith was unable to meet with van Bergen on the same date, van Bergen later emailed the same letter to Griffith.[35]

---

[34] Letter from Kathleen van Bergen, CEO, Artis-Naples, to Ashley Leigh (Apr. 1, 2022) [attached as **Exhibit 12**]; Letter from Kathleen van Bergen, CEO, Artis-Naples, to Erik Berg (Apr. 1, 2022) [attached as **Exhibit 13**].

[35] Letter from Kathleen van Bergen, CEO, Artis-Naples, to James Griffith (Apr. 1, 2022) [attached as **Exhibit 14**].

108.   In the letter, Artis-Naples provided Plaintiffs three "options" for their employment. One, Plaintiffs could receive the COVID-19 vaccine in violation of their religious beliefs, and return to work in the 2022-23 season. Two, Plaintiffs could take another year leave of absence, completely unpaid, and then return to work in the 2023-24 season—but only if they accepted a COVID-19 vaccine in violation of their religious beliefs. Or three, Plaintiffs could resign from Artis-Naples effective June 30, 2022, and, so long as they signed a full release of liability, receive severance pay for one year.

109.   If Plaintiffs did not accept any of these three options, then Artis-Naples indicated that it would terminate them as of June 30, 2022.

110.   On April 8, 2022—while indisputably still employed by Artis-Naples, and hoping to keep the job he had held since 1989—Plaintiff Griffith submitted to Artis-Naples two additional exemption requests, this time using the forms prescribed by Florida Statute § 381.00317: one for a religious exemption and one for a periodic testing exemption.[36]

111.   On April 22, 2022—while indisputably still employed by Artis-Naples, and hoping to keep the jobs they had held since 1990 and 2005, respectively—Plaintiffs

---

[36] James Griffith, Completed Forms, Religious Exemption from COVID-19 Vaccination & Exemption from COVID-19 Vaccination Based On Periodic Testing [attached as **Exhibit 15**].

Berg and Leigh also submitted the same two requests each, using the forms prescribed by Section 381.00317.[37]

112.    Under Florida law, these completed exemption statements automatically "*require[]* the employer to allow the employee to opt-out of the employer's COVID-19 vaccination mandate," without further consideration, question or inquiry.[38]

113.    Instead of granting Plaintiffs their requested exemptions as *required* by Section 381.00317, Artis-Naples deliberately chose to flout and violate the law.

114.    In emails dated April 14, 2022, and April 26, 2022, van Bergen rejected Plaintiffs' respective requests for a renewed exemption, falsely claiming that Section 381.00317 did not apply to the Mandate because the law was enacted after Artis-Naples's COVID Committee denied Plaintiffs' initial accommodation requests.[39]

115.    On May 16, 2022, Plaintiffs' counsel sent a demand letter to Artis-Naples CEO Kathleen van Bergen "as a final attempt to resolve this issue and vindicate their

---

[37]   Ashley Leigh, Completed Forms, Religious Exemption from COVID-1*9* Vaccination & Exemption from COVID-19 Vaccination Based On Periodic Testing [attached as **Exhibit 16**]; Erik Berg, Completed Forms, Religious Exemption from COVID-19 Vaccination & Exemption from COVID-19 Vaccination Based On Periodic Testing [attached as **Exhibit 17**].

[38]   *See* Forms, *supra* notes 36 & 37; Exs. 15–17; *see also Barkis*, *supra* note 1 and Ex. 1.

[39]   Email from Kathleen van Bergen, CEO, Artis-Naples, to Jim Griffith (Apr. 12, 2022, 12:41 PM) [attached as **Exhibit 18**]; Email from Kathleen van Bergen, CEO, Artis-Naples, to Jim Griffith (Apr. 14, 2022, 8:46 AM) [attached as **Exhibit 19**]; Email from Kathleen van Bergen, CEO, Artis-Naples, to Erik Berg (Apr. 26, 2022, 3:52 PM) [attached as **Exhibit 20**]; Email from Kathleen van Bergen, CEO, Artis-Naples, to Ashley Leigh (Apr. 26, 2022, 3:53 PM) [attached as **Exhibit 21**].

clear rights without judicial intervention."[40] Plaintiffs once again requested that their religious exemption requests be granted, and that they be permitted to return to work with reasonable alternative precautions, such as periodic testing.

116.   In reckless disregard of its Title VII obligations and in blatant violation of Section 381.00317, Artis-Naples doubled-down on its discriminatory mandate and rejected Plaintiffs' attempt for an amicable resolution.

117.   On June 30, 2022, Artis-Naples unlawfully terminated Plaintiffs' employment solely because of their religious refusal to comply with the Mandate.

## VI.   Artis-Naples's Unlawful, Unscientific and Irrational Pretext for its Discriminatory Mandate.

118.   Artis-Naples irrationally and pretextually argues that accommodating unvaccinated employees who follow alternative preventative measures would place an "undue hardship" on its operations—specifically, that unvaccinated employees present "a direct threat" of infection to patrons and coworkers.[41]

119.   Artis-Naples's "undue hardship" argument is merely a pretext for religious discrimination, unsupported by scientific or medical evidence, and evinces a reckless disregard of its obligations under Title VII and Section 381.00317.

---

[40] Letter from Horatio G. Mihet, Vice President of Legal Affairs & Chief Litigation Counsel, Liberty Counsel, to Kathleen van Bergen, CEO, Artis-Naples (May 16, 2022), https://lc.org/PDFs/Attachments2PRsLAs/052322REDACTEDLtrArtis-NaplesReUnlawfu%20DenialofReligiousExemptions_Redacted.pdf.

[41] Mandate, *supra* note 16; Ex. 2.

### A. As a Matter of Law, Complying with Florida Law and Public Policy Cannot Be an "Undue Hardship" on Artis-Naples.

120. As alleged above, and as acknowledged by Artis-Naples's own legal counsel, Florida law *requires* Artis-Naples to exempt Plaintiffs from the Mandate on the basis of either their religious beliefs or their agreement to undergo periodic testing. *See* Fla. Stat. § 381.00317; *see also*, note 1, *supra*.

121. As a matter of law, it can never be an "undue hardship" for an employer to comply with the state law and public policy. Nor is it an "undue hardship" for an employer to provide its employees with accommodations that the law and public policy *require* the employer to provide.

122. If it is true that an employer would suffer an undue hardship if accommodating an employee's religious practice would violate the law, then the converse must also be true: Artis-Naples cannot assert an "undue hardship" in providing a religious accommodation that state law requires it to provide.

123. Section 381.00317 unequivocally demonstrates Florida's public policy on private-employer vaccination mandates, and it demonstrates that the accommodations that Plaintiffs sought are legally required, and, therefore, they cannot be an undue hardship for Artis-Naples.

### B. Scientific Evidence Shows that Unvaccinated Persons Are Not Vectors of Disease Compared with Vaccinated Persons.

124. Artis-Naples's pretextual position that unvaccinated employees are vectors of disease, while vaccinated employees are not, also contravenes scientific evidence.

125.    According to an October 2021 study published in the prestigious peer-reviewed medical journal *The Lancet* and funded by the United Kingdom's National Institute for Health Research, "fully vaccinated individuals with breakthrough infections have peak viral load similar to unvaccinated cases" and "can efficiently transmit infection" in close settings, including to fully vaccinated persons.[42] The study found "no evidence of lower SARs from fully vaccinated delta index cases than from unvaccinated ones," and "[t]he modest scale of differences in viral kinetics between fully vaccinated and unvaccinated individuals with delta infection might explain the relatively high rates of transmission seen from vaccinated delta index cases." In sum, the study shows that the impact of vaccination on community transmission of circulating variants of SARS-CoV-2 is not significantly different from the impact among unvaccinated people.

126.    Similarly, researchers in California observed no major differences between vaccinated and unvaccinated individuals of SARS-CoV-2 viral loads, even in those with proven asymptomatic infection.[43]

---

[42] Anika Singanayaman et al., *Community Transmission and Viral Load Kinetics of the SARS-CoV-2 Delta (B.1.617.2) Variant in Vaccinated and Unvaccinated Individuals in the UK*, Lancet Infectious Diseases (Oct. 28, 2021), https://www.thelancet.com/action/showPdf?pii=S1473-3099%2821%2900648-4.

[43] Charlotte Acharya et al., *No Significant Difference In Viral Load Between Vaccinated and Unvaccinated, Asymptomatic and Symptomatic Groups Infected with SARS-Cov-2 Delta Variant*, medRvix (Oct. 5, 2021), https://www.medrxiv.org/content/10.1101/2021.09.28.21264262v2.full.pdf.

127.    CDC Director Rochelle Walensky declared that "the Delta infection resulted in similarly high SARSCoV-2 viral loads in vaccinated and unvaccinated people."[44]

128.    Another study detailed COVID-19 breakthrough infections at Israel's largest medical center among fully vaccinated healthcare workers, who in turn transmitted the infection to their patients.[45] The study noted that although most breakthrough cases were mild or asymptomatic, nearly 20% had persistent symptoms lasting six weeks or longer.

129.    Dr. Carlos Franco-Paredes, an infectious disease expert from the University of Colorado, explained in *The Lancet* that "the current evidence suggests that current mandatory vaccination policies might need to be reconsidered, and that vaccination status should not replace mitigation practices such as mask wearing, physical distancing, and contact-tracing investigations, even within highly vaccinated populations."[46]

---

[44] Statement from CDC Director Rochelle P. Walensky, MD, MPH on Today's MMWR, Centers for Disease Control & Prevention (July 30, 2021), https://www.cdc.gov/media/releases/2021/s0730-mmwr-covid-19.html.

[45] Moriah Bergwerk et al., *COVID-19 Breakthrough Infections in Vaccinated Health Care Workers*, New England Med. J. (Oct. 14, 2021), https://www.nejm.org/doi/full/10.1056/NEJMoa2109072.

[46] Carlos Franco-Paredes, *SARS-CoV-2 Among Fully Vaccinated Individuals*, The Lancet (Jan. 2022), https://www.thelancet.com/action/showPdf?pii=S1473-3099%2821%2900768-4.

130.   Indeed, scientific data shows the exact opposite of Artis-Naples's pretextual justification, namely that COVID-19 vaccination does not make a vaccinated employee less "risky" or less of a "direct threat" relative to the risk of transmission posed by an unvaccinated employee, especially when both employees wear PPE, and when the unvaccinated employee is willing to undergo regular testing as an accommodation.[47]

131.   Scientific data also shows the waning effectiveness of the COVID-19 vaccines and boosters. A recent National Institutes of Health (NIH)-sponsored study found that COVID-19 vaccine-induced antibody response to the Omicron subvariants wanes significantly over time. Indeed, the study found that immune responses to several Omicron subvariants "waned substantially" among "all groups" of individuals who received the Johnson & Johnson, Pfizer, or Moderna vaccine as well as a booster dose or combination of different vaccines.[48]

132.   Even more recently, the Centers for Disease Control and Prevention announced on August 11, 2022, that it relaxed its COVID-19 guidelines. The CDC's new guidelines dropped the recommendation that Americans quarantine themselves if they come into close contact with an infected person, announced that people no

---

[47] *See* Sanjay Mishra, *Evidence Mounts that People with Breakthrough Infections Can Spread Delta Easily*, National Geographic (Aug. 20, 2021), https://www.nationalgeographic.com/science/article/evidence-mounts-that-people-with-breakthrough-infections-can-spread-delta-easily.

[48] Kirsten Lyke et al, *Rapid Decline in Vaccine-boosted Neutralizing Antibodies against SARS-CoV-2 Omicron Variant*, Cell Reports Medicine (July 19, 2022), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9212999/pdf/main.pdf

longer need to maintain six feet of social distancing, and no longer recommends screening testing of asymptomatic people in most community settings.[49] The CDC's changes "are driven by a recognition that an estimated 95% of Americans 16 and older have acquired some level of immunity, either from being vaccinated or infected."[50]

133.   In short, Artis-Naples's pretextual argument that allowing Plaintiffs to work with alternative precautions would be "an undue hardship" is unsupported by scientific evidence and is at odds with the CDC's guidelines.

### C.   Artis-Naples Allows Unvaccinated Patrons and Visitors on Premises.

134.   Despite evicting Plaintiffs from its premises in October 2021 for not being vaccinated, Artis-Naples allows (and has allowed) unvaccinated patrons to attend Naples Philharmonic concerts and other events.

135.   From November 2021 until May 2022, Artis-Naples allowed unvaccinated, unmasked guests to attend Naples Philharmonic concerts as long as they provided "proof of a professionally administered rapid antigen test taken no more than 24 hours prior to the performance date or a professionally administered negative COVID-19 PCR test taken no more than 72 hours prior to the performance date."[51]

---

[49] Greta M. Massetti et al., *Summary of Guidance for Minimizing the Impact of COVID-19 on Individual Persons, Communities, and Health Care Systems*, Ctrs. for Disease Control & Prevention (Aug. 11, 2022), https://www.cdc.gov/mmwr/volumes/71/wr/pdfs/mm7133e1-H.pdf.

[50] Mike Stobbe and Collin Binkley, *CDC Drops Quarantine, Distancing Recommendations for COVID*, Associated Press (Aug. 11, 2022), https://apnews.com/article/covid-science-health-pandemics-public-ace8870b5e4ac4500aa06964db0544b8.

[51] Artis-Naples 2021-22 COVID Protocols, *supra* note 14.

136.    On May 20, 2022, four days after Plaintiffs sent their demand letter, Artis-Naples announced that it was "pleased to *lift all COVID-19 patron protocols*." And as of July 29, 2022, Artis-Naples states that it "does not currently have any COVID-19 patron protocols."[52]

137.    Thus, Artis-Naples already allows unvaccinated patrons and visitors to attend its events, including orchestra performances. These unvaccinated individuals are permitted to be in the same concert hall, and breathe the same air, as the Naples Philharmonic musicians.

138.    Notwithstanding that the Mandate violates state and federal law, no logical reason exists why Artis-Naples could not provide Plaintiffs with the same accommodation that it provided (and continues to provide) for its visitors and patrons.

139.    Indeed, upon information and belief, the SARSCoV-2 virus does not know the difference between an unvaccinated musician and an unvaccinated patron.

### D.    Artis-Naples Allows Unvaccinated Employees to Interact with Vaccinated Employees on Its Premises and at Its Sponsored Events.

140.    Artis-Naples's purported "undue hardship" of allowing Plaintiffs to work is also exposed as a pretext for religious discrimination by its apparently lax workplace culture when patrons are not around.

141.    For example, as already alleged above, at the April 1, 2022, meeting where Artis-Naples issued Plaintiffs its vaccinate-or-be-fired ultimatum, CEO

---

[52] *Health & Safety*, Artis-Naples (July 29, 2022), https://artisnaples.org/visit/health-safety.

Kathleen van Bergen met in person with Plaintiff Leigh, and separately with Plaintiff Berg and his wife, shook their hands, and stood at a small, six-person table with them.

142.    During the meeting, Plaintiff Berg and his wife asked van Bergen whether they needed to put masks on. Van Bergen, who was herself unmasked, responded that masking was unnecessary because Berg tested negative for COVID-19 before the meeting.

143.    Plaintiffs' negative COVID-19 tests were sufficient for van Bergen to meet with them on campus, unmasked, and to shake their hands. No rational, and no legally valid, reason exists why Artis-Naples could not also allow the same employees to continue their careers at Artis-Naples with periodic COVID-19 testing, as Artis-Naples is required by Florida law to allow.

144.    As another example, even though it had evicted Plaintiffs from its premises in October 2021, Artis-Naples invited Plaintiffs to attend its Christmas party in December 2021, and its end-of-season party in May 2022, *despite their continued unvaccinated status*. After Plaintiffs tested negative for COVID-19, Artis-Naples allowed them to mingle, interact, shake hands with—and even to hug—its vaccinated employees. Artis-Naples also allowed Plaintiffs to eat from the same self-serve food buffet as the vaccinated employees.

145.   Examples of the unvaccinated Plaintiffs closely socializing indoors with Artis-Naples coworkers at an end-of-season party organized and hosted by Artis-Naples at a local bowling alley can be seen in these pictures, the first of which includes van Bergen doing such socializing herself with unvaccinated Plaintiff Griffith:

  

146.   There is no rational reason, nor any legally valid reason, why the same accommodation Artis-Naples provided for the unvaccinated Plaintiffs to attend Artis-Naples-sponsored social events (testing negative for COVID-19) cannot be provided to allow them to continue their decades-long careers at Artis-Naples.

147.   Yet, Artis-Naples pretextually contends that the SARSCoV-2 virus is more contagious at a massive concert hall humming with state-of the-art filtration systems than at a close business meeting or a bowling alley where food, hugs and handshakes are shared and given.

### E.   The Mandate is An Extreme Outlier in Florida's Performance Arts Industry.

148.   Artis-Naples's Mandate not only directly violates Florida law; it is a radical outlier among performance arts entities across the State.

149.   Upon information and belief, and based on publicly available sources, the Fort Myers-based Southwest Florida Symphony does not mandate vaccination for its employees, job applicants, contractors, and volunteers. Indeed, as of March 2022, the Southwest Florida Symphony "no longer require patrons to wear masks to attend performances at all venues."[53]

150.   Upon information and belief, and based on publicly available sources, the Orlando Philharmonic Orchestra does not mandate vaccination for its employees, job applicants, contractors, and volunteers. Indeed, on March 7, 2022, the Orchestra even lifted "mask requirements" for indoor events, stating that "masks will no longer be required for patrons of OPO performances."[54] As of May 2022, all performances are sat at full capacity with no socially-distanced seating.

151.   Upon information and belief, and based on publicly available sources, the Arsht Center, Miami's preeminent performance arts center, does not mandate vaccination for its employees, contractors, volunteers, and performers, which includes the Miami Symphony Orchestra. Indeed, as of March 11, 2022, the Arsht Center no

---

[53] *COVID-19 Protocols*, Southwest Florida Symphony, https://www.swflso.org/covid-19-protocols/.

[54] *Health & Safety Guidelines*, Orlando Philharmonic Orchestra, https://orlandophil.org/returning-to-the-concert-hall/.

longer requires masks at its facilities except when specifically requested by touring performers.[55]

152.    Upon information and belief, and based on publicly available sources, the New World Center, home of the New World Symphony (NWS) in Miami Beach, does not mandate vaccination for its employees, contractors, and volunteers. Indeed, as of March 21, 2022, masks are no longer required at NWS events. Nor are guests required to provide a negative COVID-19 test. Instead, NWS administers "weekly COVID-19 tests of all staff and musicians accessing the New World Center."[56]

153.    That other Florida performance arts venues and orchestras follow state law and do not impose vaccination requirements on their employees and applicants (and certainly not without providing the statutorily required exemptions) further confirms that Artis-Naples's Mandate is arbitrary, extreme, and discriminatory.

154.    Even outside Florida, orchestras are allowing unvaccinated musicians to work. For example, Plaintiff Leigh has knowledge upon information and belief that the Boston Symphony Orchestra has granted religious accommodations to its musicians with religious objections to the COVID-19 vaccines and has allowed them to work so long as they observe certain safety measures.

---

[55] *Health and Safety*, Adrienne Arsht Center (July 11, 2022) https://www.arshtcenter.org/plan-your-visit/health-and-safety/.

[56] *Our COVID-19 Safety Protocols*, New World Symphony, https://www.nws.edu/about/new-world-center-safety-protocols/.

155.   Nothing is different about Artis-Naples that would make it more burdensome for it to provide accommodations than it would for the Boston Symphony Orchestra or any other orchestra.

## VII.   The Availability of Reasonable Accommodations, and Plaintiffs' Willingness to Comply with Alternative Safety Measures.

156.   From September 2020 to May 2021, Artis-Naples successfully conducted a full concert season without mandatory vaccination, by incorporating weekly testing, social distancing, and the wearing masks.

157.   As they repeatedly made clear to Artis-Naples, Plaintiffs were willing to adhere to reasonable health and safety measures as an alternative to vaccination, including masking, regular testing, daily self-assessments, and other safety protocols to monitor and report any sign of symptoms, as they did during the 2020-2021 concert season.

158.   In short, Plaintiffs were willing to comply, and would have complied, with any reasonable accommodation for their sincerely held religious objection to the Mandate.

159.   Yet in reckless disregard of state and federal law, Artis-Naples summarily rejected its legal obligations, failed to accommodate Plaintiffs, and wrongfully terminated them.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, et seq.
### Religious Discrimination – Failure to Accommodate

160.   Plaintiffs re-allege and incorporate by reference each allegation set forth in paragraphs 1–159.

161.   Title VII requires an employer to reasonably accommodate an employee's religious observances and practices unless it would cause undue hardship on the conduct of the employer's business. *See* 42 U.S.C. §2000e-(j).

162.   Plaintiffs hold bona fide religious beliefs that precluded them from receiving a COVID-19 vaccine, and thus complying with the Mandate.

163.   Plaintiffs informed Artis-Naples of their religious beliefs and requested a reasonable accommodation from the Mandate.

164.   Artis-Naples failed to engage in a bilateral, individual, and cooperative process with Plaintiffs regarding their religious accommodation requests.

165.   Artis-Naples failed to accommodate Plaintiffs' religious observances and practices. Instead, Artis-Naples discharged Plaintiffs for not complying with the Mandate.

166.   Plaintiffs' religious beliefs about receiving a COVID-19 vaccine were the bases for Artis-Naples's discriminatory treatment.

167.   Accommodating Plaintiffs' religious beliefs, as required by state and federal law, would not have resulted in an undue hardship on Artis-Naples or its operations. It is not an undue hardship to comply with state and federal law.

40

168.    Artis-Naples's refusal to accommodate has been intentional, deliberate, willful, malicious, reckless, in callous disregard to Plaintiffs' rights, thereby entitling Plaintiffs to punitive damages.

169.    As a result of Artis-Naples's failure to accommodate, Plaintiffs have suffered and continue to suffer harm, including lost earnings, lost benefits, and other financial loss.

170.    As a result of Artis-Naples's unlawful COVID-19 vaccination mandate and failure to accommodate, Plaintiffs have suffered, and continue to suffer, irreparable harm. Given that their unique positions are once-in-a-lifetime employment opportunities, Plaintiffs cannot be made whole simply by monetary damages. Instead, reinstatement is necessary to fully remedy Plaintiffs for the deprivation of their federally protected rights. In any event, irreparable harm is presumed by the mere fact that Artis-Naples is recklessly violating Title VII.

171.    As a further result of Artis-Naples's unlawful failure to accommodate, Plaintiffs have suffered and continue to suffer damages, humiliation, embarrassment, emotional and physical distress, and mental anguish.

172.    Plaintiffs thus are entitled to all legal and equitable remedies under Title VII, including compensatory and punitive damages.

COUNT II
VIOLATION OF TITLE VII, 42 U.S.C. § 2000e–2
Religious Discrimination – Disparate Treatment

173.   Plaintiffs re-allege and incorporate by reference each allegation set forth in paragraphs 1–159.

174.   Title VII makes it illegal for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" on the basis of religion. 42 U.S.C. § 2000e–2(a)(1).

175.   Plaintiffs belong to a protected class of employees with bona fide religious objections to Artis-Naples's COVID-19 vaccination mandate.

176.   Artis-Naples engaged in an intentional, organization-wide and systemic policy, pattern, and practice of religious discrimination against Plaintiffs by, among other actions, maintaining a discriminatory mandatory vaccination policy that provided no religious exemption mandated by state law; failing to reasonably accommodate Plaintiffs' bona fide religious beliefs and objections to the COVID-19 vaccines; discriminatorily pressuring Plaintiffs to forego their religious beliefs and conscience to subject themselves to an unwanted medical procedure; and other forms of discrimination.

177.   At a minimum, by imposing the Mandate on Plaintiffs, deliberately refusing to accommodate Plaintiffs' sincerely held religious beliefs, and placing Plaintiffs on involuntary leave with partial pay, Artis-Naples intentionally discriminated against Plaintiffs on the basis of their religious beliefs and practices.

178.   Artis-Naples's intentionally disparate treatment was motivated by discriminatory animus toward Plaintiffs' sincere religious objections to the COVID-19 vaccines.

179.   Artis-Naples has treated Plaintiffs differently from, and less preferentially than, similarly situated employees with no religious objections to the Mandate.

180.   As a result of Artis-Naples's disparate treatment, Plaintiffs suffered adverse employment actions—including threat of discharge for noncompliance with the Mandate, involuntary leaves with partial pay, and ultimately termination of employment—that materially and adversely changed the overall terms and conditions of their employment.

181.   Artis-Naples has failed to prevent, respond to, investigate, and appropriately resolve its policy and practice of religious discrimination.

182.   Artis-Naples's disparate treatment has been intentional, deliberate, willful, malicious, reckless, in callous disregard to Plaintiffs' rights, thereby entitling Plaintiffs to punitive damages.

183.   Because of the continuous nature of Artis-Naples's discriminatory policy and practice, Plaintiffs are entitled to application of the continuing violations doctrine to all violations alleged in this Verified Complaint.

184.   As a result of Artis-Naples's disparate treatment, Plaintiffs have suffered and continue to suffer harm, including lost earnings, lost benefits, and other financial loss.

185.   As a result of Artis-Naples's unlawful COVID-19 vaccination mandate and disparate treatment, Plaintiffs have suffered, and continue to suffer, irreparable harm. Given that their unique positions are once-in-a-lifetime employment opportunities, Plaintiffs cannot be made whole simply by monetary damages. Instead, reinstatement is necessary to fully remedy Plaintiffs for the deprivation of their federally protected rights. In any event, irreparable harm is presumed by the mere fact that Artis-Naples is recklessly violating Title VII.

186.   As a further result of Artis-Naples's unlawful disparate treatment, Plaintiffs have suffered and continue to suffer damages, humiliation, embarrassment, emotional and physical distress, and mental anguish.

187.   Plaintiffs thus are entitled to all legal and equitable remedies under Title VII, including compensatory and punitive damages.

## COUNT III
### VIOLATION OF TITLE VII, 42 U.S.C. § 2000e–2
### Religious Discrimination – Wrongful Termination

188.   Plaintiffs re-allege and incorporate by reference each allegation set forth in paragraphs 1–159.

189.   Title VII makes it unlawful for an employer "to discharge any individual … because of such individual's ... religion." 42 U.S.C. § 2000e–2(a)(1).

190.   At the time of the discrimination, Plaintiffs were Artis-Naples employees—qualified in all respects to do their jobs competently—with sincere religious objections to receiving COVID-19 vaccines.

191.   Artis-Naples terminated Plaintiffs' employment after Plaintiffs refused to violate their conscience by subjecting themselves to Artis-Naples's vaccination mandate.

192.   Artis-Naples's termination of Plaintiffs was an adverse employment action that materially and adversely changed the overall terms and conditions of their employment, in violation of Title VII.

193.   Artis-Naples's conduct has been intentional, deliberate, willful, malicious, reckless, in callous disregard to Plaintiffs' rights, thereby entitling Plaintiffs to punitive damages.

194.   As a result of Artis-Naples's wrongful termination of Plaintiffs, Plaintiffs have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss.

195.   As a result of Artis-Naples's unlawful COVID-19 vaccination mandate and wrongful termination, Plaintiffs have suffered, and continue to suffer, irreparable harm. Given that their unique positions are once-in-a-lifetime employment opportunities, Plaintiffs cannot be made whole simply by monetary damages. Instead, reinstatement is necessary to fully remedy Plaintiffs for the deprivation of their federally protected rights. In any event, irreparable harm is presumed by the mere fact that Artis-Naples is recklessly violating Title VII.

196.   As a further result of Artis-Naples's wrongful termination of Plaintiffs, Plaintiffs have suffered and continue to suffer damages, humiliation, embarrassment, emotional and physical distress, and mental anguish.

197.   Plaintiffs thus are entitled to all legal and equitable remedies under Title VII, including compensatory and punitive damages.

## COUNT IV
### VIOLATION OF TITLE VII, 42 U.S.C. § 2000e–3(a)
### Religious Discrimination – Retaliation

198.   Plaintiffs re-allege and incorporate by reference each allegation set forth in paragraphs 1–159.

199.   Title VII's anti-retaliation provision makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

200.   Plaintiffs engaged in protected activities when, among other actions, they (1) requested a religious accommodation in August 2021 from the Mandate; (2) made their objections about the Mandate known to Artis-Naples in writing on numerous occasions; (3) informed Artis-Naples's CEO Kathleen van Bergen about the illegality of the Mandate under Fla. Stat. § 381.00317; and (4) requested exemptions to the Mandate pursuant to Fla. Stat. § 381.00317.

201.   Plaintiffs suffered a materially adverse employment action when Artis-Naples, among other actions, (1) rejected their accommodation requests; (2) placed Plaintiffs on involuntary leave with partial pay; (3) reiterated its Mandate by forcing Plaintiffs to either receive a COVID-19 injection or lose their jobs; and (4) failed to

renew Plaintiffs' employment contracts, and terminated Plaintiffs, despite their working over 82 combined years at Artis-Naples.

202. The threat of job loss would normally dissuade a reasonable worker from filing a discrimination complaint, and Plaintiffs' requested (and rejected) accommodation and corresponding refusal to receive the injection is causally related to the adverse employment action.

203. Further, Plaintiffs had a good faith, reasonable belief that Artis-Naples was engaging in unlawful employment practices by, among other actions, refusing to accommodate its employees' religious observances and practices and intentionally violating Fla. Stat. § 381.00317. In light of the facts, Plaintiffs' beliefs were objectively reasonable. Artis-Naples retaliated against Plaintiffs for objecting to its unlawful Mandate by placing them on involuntary leave with partial pay and ultimately terminating their employment.

204. Artis-Naples's actions thus constituted unlawful retaliation in violation of Title VII.

205. As a result of Artis-Naples's unlawful retaliation, Plaintiffs have suffered and continue to suffer harm, including lost earnings, lost benefits, and other financial loss.

206. As a result of Artis-Naples's unlawful COVID-19 vaccination mandate and retaliation, Plaintiffs have suffered, and continue to suffer, irreparable harm. Given that their unique positions are once-in-a-lifetime employment opportunities, Plaintiffs cannot be made whole simply by monetary damages. Instead, reinstatement is

47

necessary to fully remedy Plaintiffs for the deprivation of their federally protected rights. In any event, irreparable harm is presumed by the mere fact that Artis-Naples is recklessly violating Title VII.

207.   As a further result of Artis-Naples's unlawful retaliation, Plaintiffs have suffered and continue to suffer damages, humiliation, embarrassment, emotional and physical distress, and mental anguish.

208.   Plaintiffs thus are entitled to all legal and equitable remedies available for Title VII violations, including compensatory and punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court:

A.   Declare that Artis-Naples violated Title VII by failing to reasonably accommodate Plaintiffs' bona fide religious beliefs;

B.   Declare that Artis-Naples violated Title VII by intentionally discriminating against Plaintiffs for their bona fide religious beliefs;

C.   Declare that Artis-Naples violated Title VII by wrongfully terminating Plaintiffs for their sincerely held religious objections to Artis-Naples's COVID-19 vaccination mandate;

D.   Declare that Artis-Naples violated Title VII by retaliating against Plaintiffs for engaging in statutorily protected activities;

E.   Enjoin Artis-Naples from enforcing its discriminatory COVID-19 vaccination mandate, and from otherwise discriminating or retaliating against Plaintiffs;

F.     Order Artis-Naples to reinstate Plaintiffs to their previous positions, with back pay, and restore Plaintiffs to their original compensation, terms, conditions, and privileges of employment;

G.     Award Plaintiffs back pay, front pay and other compensatory damages that Plaintiffs suffered, including future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and nonpecuniary losses;

H.     Award Plaintiffs actual damages, in an amount to be proven at trial, that Plaintiffs sustained as a result of Artis-Naples's discriminatory, unconscionable, and unlawful COVID-19 vaccination mandate;

I.     Award punitive damages to Plaintiffs because Artis-Naples recklessly and maliciously disregarded Plaintiffs' federally protected rights;

J.     Award Plaintiffs the reasonable costs and expenses of this action, including reasonable attorneys' fees; and

K.     Grant such other and further relief as the Court deems equitable and just under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a jury trial on all triable issues.

Dated: September 21, 2022          Respectfully submitted,

                                   /s/ Horatio G. Mihet
                                   Mathew D. Staver
                                   Horatio G. Mihet
                                   Roger K. Gannam
                                   LIBERTY COUNSEL
                                   P.O. Box 540774
                                   Orlando, FL 32854
                                   Tel: (407) 875-1776
                                   Fax: (407) 875-0770
                                   court@lc.org
                                   hmihet@lc.org
                                   rgannam@lc.org

                                   *Attorneys for Plaintiffs*

**VERIFICATION**

I, Ashley Leigh, am over the age of eighteen and a former employee of Artis-Naples. I have reviewed the allegations made in this Verified Complaint, and as to those allegations of which I have personal knowledge or pertain to me, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on the exhibits and external sources referenced in the complaint, and I believe them to be true. If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Florida, that the foregoing statements are true and correct to the best of my knowledge.

Dated: September 20, 2022

/s/ Ashley R Leigh
Ashley R. Leigh
(original signature retained by Counsel)

## VERIFICATION

I, Erik Berg, am over the age of eighteen and a former employee of Artis-Naples. I have reviewed the allegations made in this Verified Complaint, and as to those allegations of which I have personal knowledge or pertain to me, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on the exhibits and external sources referenced in the complaint, and I believe them to be true. If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Florida, that the foregoing statements are true and correct to the best of my knowledge.

Dated: September 20, 2022

/s/ Erik R. Berg
Erik R. Berg
(original signature retained by Counsel)

## VERIFICATION

I, James Griffith, am over the age of eighteen and a former employee of Artis-Naples. I have reviewed the allegations made in this Verified Complaint, and as to those allegations of which I have personal knowledge or pertain to me, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on the exhibits and external sources referenced in the complaint, and I believe them to be true. If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Florida, that the foregoing statements are true and correct to the best of my knowledge.

Dated: September 20, 2022

/s/ James Griffith
James Griffith
(original signature retained by Counsel)

# INDEX OF EXHIBITS

| Exhibit Name | Type | Ex. |
|---|---|---|
| Alexis Barkis, Quarles & Brady LLP, *Florida Legislation Restricting Workplace Vaccine Mandates—What Florida Employers Need to Know* (Nov. 19, 2021) | Article | 1 |
| Artis-Naples, Musicians COVID-19 Vaccination Requirement and Accommodation Process (2021) | Memorandum | 2 |
| Artis-Naples, COVID-19 Vaccination Religious Accommodation Request (2021) | Document | 3 |
| Ashley Leigh, to Glenn Basham (Sept. 29, 2021, 12:29 PM) | Email | 4 |
| Kathleen van Bergen, CEO, Artis-Naples, to Ashley Leigh (Oct. 5, 2021) | Letter | 5 |
| Kathleen van Bergen, CEO, Artis-Naples, to Erik Berg (Oct. 5, 2021) | Letter | 6 |
| Kathleen van Bergen, CEO, Artis-Naples, to James Griffith (Oct. 5, 2021) | Letter | 7 |
| Artis-Naples, *COVID-19 Protocols and Policies Update* (Oct. 28, 2021) | Press Release | 8 |
| Kathleen van Bergen, CEO, Artis-Naples, to Ashley Leigh (Dec. 1, 2021) | Letter | 9 |
| Kathleen van Bergen, CEO, Artis-Naples, to Erik Berg (Dec. 1, 2021) | Letter | 10 |
| Kathleen van Bergen, CEO, Artis-Naples, to James Griffith (Dec. 1, 2021) | Letter | 11 |
| Kathleen van Bergen, CEO, Artis-Naples, to Ashley Leigh (Apr. 1, 2022) | Letter | 12 |
| Kathleen van Bergen, CEO, Artis-Naples, to Erik Berg (Apr. 1, 2022) | Letter | 13 |
| Kathleen van Bergen, CEO, Artis-Naples, to James Griffith (Apr. 1, 2022) | Letter | 14 |
| James Griffith, Completed Forms, Religious Exemption from COVID-19 Vaccination & Exemption from COVID-19 Vaccination Based On Periodic Testing | Forms | 15 |
| Ashley Leigh, Completed Forms, Religious Exemption from COVID-19 Vaccination & Exemption from COVID-19 Vaccination Based On Periodic Testing | Forms | 16 |
| Erik Berg, Completed Forms, Religious Exemption from COVID-19 Vaccination & Exemption from COVID-19 Vaccination Based On Periodic Testing | Forms | 17 |
| Kathleen van Bergen, CEO, Artis-Naples, to Jim Griffith (Apr. 12, 2022, 12:41 PM) | Email | 18 |
| Kathleen van Bergen, CEO, Artis-Naples, to Jim Griffith (Apr. 14, 2022, 8:46 AM) | Email | 19 |
| Kathleen van Bergen, CEO, Artis-Naples, to Erik Berg (Apr. 26, 2022, 3:52 PM) | Email | 20 |
| Kathleen van Bergen, CEO, Artis-Naples, to Ashley Leigh (Apr. 26, 2022, 3:53 PM) | Email | 21 |